FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 10 2011

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT OF
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

WALTER PAUL HOOVER AND
VIVIAN HOOVER                                                            PLAINTIFFS

vs.                                  No. 4-11-CV-0395 JM

UNITED STATES OF AMERICA                                                 DEFENDANT

This case assigned to District Judge Moody
and to Magistrate Judge Deere

## COMPLAINT

Plaintiffs, Walter Paul Hoover and Vivian Hoover, by their attorneys, The Brad Hendricks Law Firm, for their Complaint, state:

1. This is a medical negligence case under the Federal Tort Claims Act, 28 U.S.C. §2671, et seq. On June 9, 2010, Mr. and Mrs. Hoover made individual and separate claims in writing to the Department of Veterans Affairs, Office of Regional Counsel, 2200 Fort Roots Drive, North Little Rock, Arkansas 72114. On November 19, 2010, the Department of Veteran Affairs denied their claims. A copy of Mr. and Mrs. Hoover's claims are attached as Exhibits "A" and "B" to this Complaint and incorporated herein as if set out word for word. A copy of the Department of Veteran Affairs denial letter is attached as Exhibit "C".

2. Plaintiffs, Walter Paul Hoover and Vivian Hoover, reside at 139 North Ball Street, Webb City, Missouri 64870-1840.

3. The Defendant owns, operates, and maintains the VA Medical Center in Little Rock, Arkansas through the Department of Veterans Affairs, a federal agency. All of the health care providers caring for Mr. Hoover at the VA Medical Center, Little Rock, Arkansas, were employees of the VA acting in the course and scope of their employment.

4. This Court has jurisdiction under 28 U.S.C. §1346, and venue is proper under 28 U.S.C. §1402.

5. Plaintiff Walter Paul Hoover served in the United States Army and was honorably discharged. He is entitled to medical care and treatment from the VA pursuant to Title 38 C.F.R.

1

6.     On August 7, 2009 Mr. Hoover fell at his brother's house injuring his back. On August 10, 2009 he sought treatment at the VA Medical Center in Fayetteville, Arkansas because of severe pain. An x-ray revealed that he had a crushed L-4 vertebrae. Examination by VA revealed that he had full motor and sensory function and was neurologically intact.

7.     Mr. Hoover continued to have pain from the crushed vertebrae and in August 2009, at the recommendation of VA Fayetteville, he underwent a kyphoplasty at Washington Regional Medical Center in Fayetteville, Arkansas. Kyphoplasty is a procedure where a balloon is inserted into the patient's spine to expand the crushed area of the vertebrae and then a plastic cement is inserted into the vertebra in an attempt to restore the original vertebral height. The kyphoplasty failed to relieve Mr. Hoover's pain and on September 18, 2009 he was transferred to VA Medical Center in Little Rock, Arkansas for consultation regarding further treatment. Examination by VA revealed that he had full motor and sensory function and was neurologically intact. On September 24, 2009, he underwent surgery at the VA Medical Center in Little Rock to remove the plastic cement inserted during the kyphoplasty and to perform an L4/L5 discectomy and spinal instrumentation placement. The VA surgeons for this procedure was Dr. Jeffrey Oppenheimer and Dr. Dennis McDonnell. During this procedure, the surgeons misplaced screws used in the instrumentation and instead misplaced screws into Mr. Hoover's spinal canal, including the posterior L3 screw which was negligently placed in the spinal canal when it should have been placed by the surgeons in the vertebral body.

8.     During the surgery on September 24, 2009, Mr. Hoover lost 1700cc of blood. This is a significant blood loss for this type of surgery. No one at the VA appreciated the significance of such blood loss nor identified a reason for such blood loss. It was not until VA performed a second surgery, re-exploration on September 29, 2009 to try to correct the negligence which occurred during the surgery of September 24, 2009 that VA surgeons Dr. Oppenheimer and Dr. McDonnell acknowledged that the cause of the blood loss of 1700 cc was a retroperitoneal hemorrhage in the tranquadratus surgical corridor, which is the area where he had been operated on September 24, 2009. It was only at this point in time on September 29, 2009

that the blood clots and hemorrhaging were evacuated.

9. Immediately post surgery of September 24, 2009 Mr. Hoover had documented significant neurological deficits including paralysis, primarily on the left, including no quadriceps function, numbness, sensory loss and significantly increased pain. It was documented by VA Dr. Oppenheimer in the VA records that imaging study performed following the surgery demonstrated L3 screw in the ventral epidural space in the spinal canal at the level of L3-4 disc space and fracture material in the spinal canal. After he had discussed the patient's paralysis and other deficits with VA Dr. McDonnell, Dr. Oppenheimer determined that Mr. Hoover needed re-exploration for hardware re-positioning and decompression of the spinal cord if this had not improved within forty eight (48) hours. His neurological deficits continued for more than 48 hours, and yet, VA did not perform any surgery for more than four (4) days after the first documentation of his neurological deficits.

10. On September 28, 2009, Dr. McDonnell and Dr. Oppenheimer informed Walter Paul and Vivian Hoover that a mistake had been made in the surgery on September 24, 2009 and that they had placed screw in the spinal column which was continuing to rub against the nerves, and was causing the paralysis and other neurological deficits. VA Dr. McDonnell informed the Plaintiffs that at the time of surgery of September 24, 2009, the camera was blurry and not working right. VA Dr. McDonnell and Dr. Oppenheimer recommended that they perform a second surgery to re-explore for hardware re-positioning and decompression of the spinal cord as the L3 screw was in the ventral epidural space in the spinal canal at the level of L3-4 disc space and there was fracture material that had not been removed in the initial surgery and remained in the spinal canal. The Plaintiffs agreed to go forward with the second surgery recommended by the VA surgeons on September 29, 2009. Mr. Hoover underwent a four and one-half hour surgery to evacuate the hemorrhage of blood and to correct the negligent placement of the screw into his spinal cord. While the surgery did result in removal of the screw from the Mr. Hoover's spinal cord and the evacuation of the blood clots and hemorrhage in the transquadratus surgical corridor, the damage done by the screw to nerves in the spinal cord and the retroperitoneal

hemorrhage left his left hip and leg paralyzed. Mr. Hoover is primarily confined to a wheel chair; he has muscle atrophy; he is in constant pain.

11. The VA, through its agents and employees, were negligent and its negligent acts constituted of the following, among other things:

    (a)    Failing to properly prepare the operating room for Mr. Hoover's surgery;

    (b)    Failing to properly perform the spinal surgery on Mr. Hoover in which a screw was negligently placed in his spinal cord;

    (c)    Negligently placing a screw in Mr. Hoover's spinal cord;

    (d)    Failing to recognize that the screw had been negligently misplaced into Mr. Hoover's spinal cord, negligently failing to remove fracture material in his spinal canal, and negligently failing to recognize and remove significant blood loss in his transquadratus surgical corridor;

    (e)    Failing to return Mr. Hoover to surgery in a timely manner to remove the screw in his spinal cord, to remove the fracture material in his spinal cord, and to evacuate the retroperitoneal hemorrhage.

    (f)    Failing to properly supervise the healthcare providers who were caring for Mr. Hoover; and

    (g)    Otherwise failing to use the degree of skill and care required under the same or similar circumstances, a standard to which it is held pursuant to the Federal Tort Claims Act.

12. Because of the negligence of the VA, Mr. Hoover suffered significant damages to his spinal cord. He requires aid, attendance, and assistance with all of his activities of daily living.

13. As a direct and proximate result of the negligence of the VA, Mr. Hoover has also suffered the following damages:

    (a)    Immense pain and suffering and mental anguish in the past and likely to be suffered in the future;

(b)   Loss of income and loss of earning capacity in the past and continuing into the future;

(c)   Medical expenses in the past and reasonably certain to be incurred in the future;

(d)   Permanent injury; and

(e)   Visible disfigurement from this injury.

14. Vivian Hoover has suffered the loss of consortium of her husband.

15. Plaintiffs are entitled to recover the amounts consistent with that claimed in the claim form95's, which are attached to this Complaint as Exhibits "A" and "B".

16. With respect to the claims of both of the Plaintiffs, the Defendant's agents, servants, and employees were at all material times acting within the scope of their office or employment, under circumstances where Defendant, if a private person, would be liable to the Plaintiffs, in accordance with the law and pursuant to the Federal Tort Claims Act.

WHEREFORE, Plaintiffs pray that they have judgment against the Defendant, and that they have all other relief to which they may be entitled.

Respectfully submitted,

***THE BRAD HENDRICKS LAW FIRM***
500 C Pleasant Valley Drive
Little Rock, AR  72227
(501) 221-0444
(501) 219-0608 (fax)
*gwise@bradhendricks.com*

BY: _____
GEORGE R. WISE, JR., ABN 78171

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

1. Submit to Appropriate Federal Agency:

DEPARTMENT OF VETERANS AFFAIRS
REGIONAL COUNSEL (555-02NLR)
2200 FORT ROOTS DRIVE
NORTH LITTLE ROCK, ARKANSAS 72114

2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code

WALTER HOOVER
30 N. BALL STREET
WEBB CITY, MO 64870

3. TYPE OF EMPLOYMENT: ☐ MILITARY ☒ CIVILIAN
4. DATE OF BIRTH: 3-11-1959
5. MARITAL STATUS: MARRIED
6. DATE AND DAY OF ACCIDENT: 9/24/2007
7. TIME (A.M. OR P.M.)

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

Had 3 back surgeries, 2 of which were botched, leaving him 100% disabled.
Please see attached Type #8

9. PROPERTY DAMAGE

NONE

NAME AND ADDRESS OF OWNER

BRIEFLY DESCRIBE THE PROPERTY...

PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Due to botched back surgeries he is now 100% disabled, can no longer walk.

11. WITNESSES

| NAME | ADDRESS |
|---|---|
| Vivian Hoover | 130 N. Ball Street Webb City MO 64870 |
| Carrie Strobach/Mike Gault | 824 Oak Street Webb City MO 64870 |
| Jessie Hoover | 2462 Canning Factory Rd Anderson, MO 64831 |

12. AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL |
|---|---|---|---|
| / | 5 million | / | 5 million |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| Walter Hoover | 417-673-1140 | 6-9-2010 |

CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

EXHIBIT A

| INSURANCE COVERAGE |
|---|
| In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property. |

Do you carry accident Insurance? ☒ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☐ No

medicare 549500006-A Hospital part A
medical part B

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes  ☐ No

NO

17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☐ No

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a seperate claim form.

Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed

25. DESCRIBE RESTRICTION OF THE SPINE, TRUNK AND NECK

*None*

26. SET FORTH ALL OTHER PATHOLOGY INCLUDING THE LOSS OF BOWEL OR BLADDER CONTROL OR THE EFFECTS OF ADVANCING AGE, SUCH AS DIZZINESS, LOSS OF MEMORY, OR BALANCE WHICH AFFECTS CLAIMANT'S ABILITY TO PERFORM SELF-CARE, AMBULATE OR TRAVEL BEYOND THE PREMISES OF THE HOME OR IF HOSPITALIZED BEYOND THE YARD OR CLINICAL AREA. DESCRIBE WHERE THE CLAIMANT GOES AND WHAT HE OR SHE DOES DURING A TYPICAL DAY.

*Otherwise OK — L leg is disabling feature*

27. IS THE CLAIMANT ABLE TO WALK WITHOUT THE ASSISTANCE OF ANOTHER PERSON?

☐ YES    ☒ NO  (If "YES," give distance)   ☐ 1 BLOCK   ☐ 5 OR 6 BLOCKS   ☐ 1 MILE   ☐ OTHER (Specify distance)

28. DESCRIBE HOW OFTEN PER DAY OR WEEK AND UNDER WHAT CIRCUMSTANCES THE INDIVIDUAL IS ABLE TO LEAVE THE HOME OR IMMEDIATE PREMISES

*for medical care only*

29. ARE AIDS SUCH AS CANES, BRACES, CRUTCHES OR WALKERS REQUIRED FOR LOCOMOTION? (If so, specify and describe effectiveness in terms of distance that can be traveled as in Item 27 above)

*wheelchair*

30. ADDITIONAL REMARKS

31. DIAGNOSIS

*Chronic back/leg pain with flaccid paralysis L leg*

32. CERTIFICATION OF NEED FOR HIGHER LEVEL AID AND ATTENDANCE (38 U.S.C. 314 (r)(2))
(To be completed only when determination is requested by Adjudication)

I HEREBY CERTIFY THAT
☒ VETERAN REQUIRES THE DAILY PERSONAL HEALTH CARE SERVICES OF A SKILLED PROVIDER WITHOUT WHICH THE VETERAN WOULD REQUIRE HOSPITAL, NURSING HOME OR OTHER INSTITUTIONAL CARE
☐ DAILY SKILLED SERVICES NOT INDICATED

33. SIGNATURE AND TITLE OF EXAMINING PHYSICIAN: *Pittman DO*

34. VA HOSPITAL OR OTHER MEDICAL FACILITY: UHCSO

☆ U.S. GPO: 1998-619-107/91406

04/18/2011 08:51 FAX 6262271999    Steffin    ☒004/011

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: <br> ...artment of Veterans Affairs <br> ...egional Counsel (598/02NLR) <br> 2200 Fort Roots Drive <br> North Little Rock, Arkansas 72114 | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code) <br> Vivian L Hoover <br> 130 N. Ball Street <br> Webb City, MO 64870 |
|---|---|

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☐ CIVILIAN | 4. DATE OF BIRTH 8-3-1940 | 5. MARITAL STATUS Married | 6. DATE AND DAY OF ACCIDENT August 7 2009 | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

Extreme Stress, loss of quality of life, loss of consortium, please see attached #8.

9.                                      PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

X                    N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

X                    N/A

10.                                  PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Loss of Health + quality of life, loss of companionship.

11.                                   WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Carrie Strubach | 824 Oak Street Webb City MO 64870 |
| Jessie Hoover | 2402 Canning Factory Rd Carthage MO 64831 |
| Jannell Pierce | 137 N Ball Webb City MO 64870 |

| 12. (See instructions on reverse.) | | AMOUNT OF CLAIM (in dollars) | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|  | 1 million |  | 1 million |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) <br> Vivian L Hoover <br> Walter Hoover | 13b. Phone number of person signing form <br> 417-673-1140 | 14. DATE OF SIGNATURE <br> 6/4/2010 <br> 7-8-210 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

NSN 7540-00-634-4046

STANDARD FORM 95
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2


EXHIBIT B

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

**15. Do you carry accident insurance?** ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☐ No

NO

**16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?** ☐ Yes   ☐ No

**17. If deductible, state amount.**

**18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?** (It is necessary that you ascertain these facts.)

**19. Do you carry public liability and property damage insurance?** ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☐ No

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority*: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose*: The information requested is to be used in evaluating claims.
C. *Routine Use*: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond*: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C. 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

SF 95   BACK

*6-11-2010*
*copy for tot*

June 9, 2010

TO: Whom It May Concern

FROM: Jesse and Theresa Hoover (Son and Daughter-in-law to Walt Hoover)

RE: Walt Hoover – Medical Condition

Let this serve as an additional perspective on the physical condition of our father, Walt Hoover, before his back surgery. Walt used to be able to drive himself to our house which is about 45 miles from his house, and go deer hunting or work on projects. He was able to walk through the woods and go fishing. A few years back, he went elk hunting in Colorado and did a lot of outdoor hiking and camping.

Recently, he did not do much heavy lifting but he was able to do many activities like shopping, going to yard sales with us, trim trees, help with mechanic work in the garage, and help with light construction projects (painting, staining wood, etc). Walt was an excellent marksman and we used to have target practice events.

Since his back surgery, we are not able to go on fishing trips or anywhere there is rough terrain. He cannot go on hunting trips and has minimal stamina due to medications and his physical condition. We have to visit him at his house since travel for him is painful and puts him through a lot so he doesn't visit us at our home any longer. He cannot ride in our car since he has to be transported by van. We do not have a suitable vehicle. He is not able to shoot his shotgun or do any target practice. Our family activities have changed dramatically. We have to consider his condition and whether it would be too hard on him before we plan anything. He has to stay behind most of the time, due to his condition. This is very sad for us and has caused us much heartache and we have lost our ability to have the quality time and events that we used to have together.

Thank you for considering our perspective.

Respectfully,

*Jesse Hoover*
Jesse Hoover

*Theresa Hoover*
Theresa Hoover

6-11-2010
copies for tort

My name is Carrie Hoover-Strobach, and I am writing to bear witness to the things my step-mother has had to endure do to the VA botching my fathers back surgery. She stayed with him and waited on him constantly during the many months of Hospitalization. From August of 2009 until his return home November 4, 2009.

She must now attend his every need, as the botched surgery has left him unable to walk and 100% disabled. He cannot help her with anything around the home as he did before, and they cannot travel and do all the things they did before. She must do it all or beg for help from others. They have always been healthy, strong and active, but this ordeal has destroyed not only his health but hers as well. The life they had and should have been able to enjoy for years to come has been taken from not just him, but her as well. She must now sleep alone, as he must sleep in the living room in a hospital bed due to his pain. She must go almost every where alone, as it is too much for her to try and load and unload his wheelchair. She is going to be 70 and it is just too hard. And he is in so much pain, he seldom ventures out unless it is to the doctor. So their quality of life has been taken away from them. This should never have happened. No one should have to endure what she has been thru, and what she will continue to have to go thru for the rest of their lives.

Thank you,
Carrie Hoover-Strobach

6-11-2010

copies
for tort ①

My name is Vivian L. Hoover.
Walt and I were married July 30, 1080. We are going to have our 30th anniversary soon. In this time we built a 3000 square foot home on Bull Shoals lake, had a houseboat, ski boat and a four stall dock. Walt was always able to take care of everything. We sold our place and moved to Webb City in 2002 in order to be close to my daughter and 4 grandchildren. We bought a 100 year old home in need of complete renovation. Walt has done all the walls, ceilings, and yard work including hauling off over 15 truck loads of debris and more. We have done all the work ourselves. Before this happened, we traveled often, as Walt is (or was before this happened) an avid hunter and fisherman. We have been on hunting trips with friends to Wyoming, Colorado, Florida & California a number of times. He & I have always been very active & in good shape for our age, and able to do pretty much whatever we wanted. Walt fell August 7th, 2009. We didn't know how bad until we took him to Fayetteville VA Aug. 10th, 09. We arrived at the emergency room at 12 noon but did not get to see a doctor until 5pm. They did x-rays and told us his L4 vertebrae was crushed. They said we had to take him home and gave him a pain shot. We were to come back 8-17-09. That week was pure hell, I got very little sleep but hung in there. On 8-17 we left here at 8am & went to Fayetteville to see Dr Runnels finally at 4:30 as he was behind schedule. He said Walts' back was really bad and he would have to go thru a very difficult surgery and would admit him today. He told us to go to the ER and they would get him admitted, that they were waiting for us. We got to the ER about 5pm. We

*6-11-2010*
*Copies for Tort*

finally saw a DR at 10pm. They gave him a pain shot and told us once again we had to take him home, they have no beds available. I said "How am I going to take him home with a broken back? They said we will load him and you can drive him home. We did not arrive home until 1:30am, as I had to drive thru a terrible thunderstorm. We were both exhausted. The very next morning Dr Runnels called and said to bring him back I have a bed ready. I stayed at the hospital with him thru this entire ordeal. We were waiting for them to find a place to do surgery, the whole time telling us it could be 3 months or more as all Doctors and hospitals are backed up. Walt was in terrible pain, and I was having to get up and down almost 24/7 to move his legs to try and relieve his pain, but nothing helped. I got almost no sleep and was completely exhausted.
After a call to Claire McKaskels office, they sent him over to Washington Regional on 8-27 for surgery-and I took him home 2 days later. We had to go back to have 2 other surgeries of which the 1st 2 were botched and have left him unable to walk for the rest of his life. He is now in constant pain, and we can no longer due any of the things we did before. He walked into the hospital, and now due to their mistakes will never walk again. I must care for him constantly, and he cannot be alone. We have to rely on others for help to do all the things that Walt took care of before. There are more detailed notes attached to Walt's tort claim if you wish to review them. I never left the hospital and stayed at his side as much as they would allow until we brought him back to Fayetteville from Littlerock following the last 2 surgeries. There is no one that can

*6-11-2010*

*copies for Toy*

②

imagine the pain my husband was, and still is- in. It is like a bad, bad nightmare. I could not sleep for worry, knowing how much he was suffering, him begging me for help and for me not to leave. I became very ill, and knew I was going to collapse so I walked to the hospital across the street to the ER there. The took me right in and ran all kinds of tests. After a couple of hours the Dr came in and told I was suffering from complete exhaustion, and if I didn't get some help and go home and rest I could have a heart attack or stroke. A few days later I did get to come home. I was so tired I just slept in my clothes for 2 or 3 days. I then had to go to the Dr again because my nerves were so shot, my hands shaking so bad I couldn't feed myself without holding the fork with both hands. I continue to have to take meds for my nerves now, alprazolam 2 times a time. I look and feel like I have aged 10 years during this ordeal, and have come to realize that we will never have our lives back and be able to do all the things we did before. Our precious golden years have been taken from us. I will continue to take care of Walt until the day he is gone. Or maybe me first-I have read that the care-takers in these kind of extreme situations often die first. He sleeps very little due to the pain, so when he is up I must be as well. I must take him to his many Dr appointments which are and hour and a half one way, and load and unload his wheelchair. I am 70, and it is exhausting.
We were enjoying our retirement, and looking forward to traveling, but no longer. He cannot help me with anything anymore, I must rely on help from family and friends. We now have a hospital bed in our living room where he

spends most of his time staring out the window. I am going to be 70 in August and all of this is becoming to much for me to bare mentally and physically. I have prayed and prayed for Walt's recovery, but the Doctors tell us nothing can be done. All this due to a surgery done with a blurry camera that wasn't working properly. Why in the world didn't they stop and get a camera that was working? All of this has taken a terrible toll on me, and there is no end in site. This is how the rest of our lives will now be. It is truly devastating.
Thank you,
Vivian Hoover



**Department of Veterans Affairs**
Office of Regional Counsel
2200 Fort Roots Drive, Bldg 5
North Little Rock, AR 72114
Phone (501)-257-4122
Fax (501)257-4130

**CERTIFIED MAIL - RRR**
November 19, 2010

Mr. J.T. Magness                                In Reply Refer To: GCL67643
J.T. Magness & Associates                       Direct Line: (501) 257-4107
P.O. Box 1512
Ozark, MO 65721

RE: Administrative Tort Claims filed on behalf of Walter and Vivian Hoover

Dear Mr. Magness:

We have completed our evaluation of your administrative tort claims filed on behalf of Walter and Vivian Hoover. Our investigation did not disclose any negligent acts or omissions by employees of the Department of Veterans Affairs acting within the scope of their employment. Accordingly, these claims are denied.

If you are dissatisfied with this decision, you may file a request for reconsideration of your claim with the VA General Counsel by any of the following means: (1) you may mail your request to the Department of Veterans Affairs, General Counsel (021B), 810 Vermont Avenue, N.W., Washington, DC 20420; (2) you may file your request by data facsimile (fax) to 202-273-6385; or (3) you may e-mail your request to OGC.torts@mail.va.gov. To be timely filed, VA must receive this request prior to the expiration of six months from the date of the mailing of this final denial. Upon filing such a request for reconsideration, VA shall have six months from the date of that filing in which to make final disposition of the claim, and your option to file suit in an appropriate U.S. District Court under 28 U.S.C. 2675(a) shall not accrue until six months after the filing of such request for reconsideration (28 C.F.R. Section 14.9).

In the alternative, if you are dissatisfied with the action taken on your claim, you may file suit in accordance with the Federal Tort Claims Act, sections 1346(b) and 2671-2680, title 28, United States Code, which provides that a tort claim that is administratively denied may be presented to a Federal district court for judicial consideration. Such a suit must be initiated within six months after the date of the mailing of this notice of final denial as shown by the date of this letter (section 2401(b), title 28, United States Code). If you do initiate such a suit, you are further advised that the proper party defendant is the United States, not VA.

Sincerely yours,

*Tammy L. Kennedy*

TAMMY L. KENNEDY
Regional Counsel

cc: Medical Center Director, VAMC, Fayetteville, AR  72703
John B. Grippi, M.D. (11ML) Director, Medical-Legal Affairs, Buffalo, NY  14215

**EXHIBIT C**