IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

WALTER PAUL HOOVER and
VIVIAN HOOVER                                                                                      PLAINTIFFS

V.                                        CASE NO. 4:11CV00395 JM

THE UNITED STATES OF AMERICA                                                  DEFENDANT

### COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

Following a bench trial on August 21-25, 2014 before the Honorable James M. Moody Jr., the Court makes the following findings of fact and conclusions of law.

1. Walter Hoover is a veteran of the United States Army and pursuant to 38 United States Code he is entitled to receive VA medical care and treatment; therefore, the Defendant had a duty to provide medical care to Walter Hoover.

2. This Court has jurisdiction of this case under 28 U.S.C. §1346, and venue is proper under 28 U.S.C. §1402.

3. Administrative tort claims on behalf of Walter Hoover and Vivian Hoover, wife, were timely filed with the Agency, Department of Veterans Affairs, within two years of the date of surgery which is at issue.

4. The Regional Counsel of the Department of Veterans Affairs, Little Rock, Arkansas, denied the Hoovers' claims on November 19, 2010. (See Ex. C of Plaintiff's Complaint). Walter Hoover and Vivian Hoover filed this litigation with the District Court, asserting negligence on the part of the Department of Veterans Affairs Medical Center, Little Rock, Arkansas, in its care and treatment of Walter Hoover.

5. The litigation herein was timely and properly filed on behalf of Walter Hoover and Vivian Hoover, and asserted economic and non economic damages on behalf of Walter Hoover, and economic and non economic damages on behalf of his wife, Vivian Hoover.

6. In August 2009, Walter Hoover fell at his home, suffering a burst fracture to the L4 vertebrae of his spine.

7. On August 10, 2009, Mr. Hoover was seen in the emergency room at the Veterans Health System of the Ozarks ("VHSO") in Fayetteville, Arkansas.

8. As of August 10, 2009, due to the burst fracture of his spine, Mr. Hoover complained of being in severe pain in his lower back with pain radiating down his legs.

9. From August 18-29, 2009, Mr. Hoover was admitted to the VHSO as an inpatient because his pain could not be adequately managed outside the hospital setting.

10. On August 27, 2009 Mr. Hoover underwent kyphoplasty at Washington Regional Medical Center in Fayetteville, Arkansas.

11. The kyphoplasty procedure failed to relieve Mr. Hoover's back pain or adequately stabilize his spine.

12. On September 18, 2009 Mr. Hoover was transferred to the VA Medical Center in Little Rock, Arkansas, for a consultation regarding surgery.

13. On September 18, 2009, Mr. Hoover was seen by Dr. Dennis McDonnell at the John L. McClellan Memorial Medical Center in Little Rock, Arkansas who explained the need for further lumbar surgery to reconstruct his spine.

14. At the time of his transfer to the VA Medical Center in Little Rock, Arkansas, neurological examination revealed that Mr. Hoover was neurologically intact.

15. Mr. Hoover agreed to proceed to surgery.

16. Mr. Hoover signed a written consent for this surgery on September 21, 2009.

17. On September 24, 2009, Dr. Jeffrey Oppenheimer and Dr. Dennis McDonnell performed a left transquadratus retroperitoneal extracavitary L4 corpectomy with L3-L4 and L4-L5 discectomy and spinal instrumentation.  Drs. Oppenheimer and McDonnell were acting within the course and scope of their employment with the VA Medical Center, Department of Veterans Affairs, at the time of the surgery.

18. The standard of care in performing this surgery required the plates and screws used be properly placed.

19. During the September 24, 2009 surgery, Dr. Jeffrey Oppenheimer placed the plate and screws in a matter that violated the standard of care.

20. During the September 24, 2009 surgery, Dr. Jeffrey Oppenheimer placed the screw in a manner which damaged and injured Mr. Hoover's L-3 nerve root.

21. On September 28, 2009, Dr. McDonnell and Dr. Oppenheimer recommended that a second surgery be performed to reposition the hardware and remove the misplaced screw and to decompress the spinal cord.

22. On September 29, 2009, Walter Hoover underwent a second surgery to correct the negligent placement of the screw and to decompress his spine.

23. The negligent placement of the screw into Mr. Hoover's spinal canal caused complete paralysis of his quadricep.

24. Dr. Oppenheimer's negligent misplacement of the screw caused Mr. Hoover permanent injury.

25. Mr. Hoover is entitled to recover damages for past and future medical care; pain and suffering and mental anguish; permanent injury; and disfigurement or the visible results of his injury, and loss of earning capacity.

26. Vivian Hoover has been married to Walter Hoover for 33 years and she is entitled to damages for loss of consortium.

27. Vivian Hoover is entitled to recover twenty-five thousand dollars ($25,000.00) for loss of consortium

28. Walter Hoover is entitled to recover seven hundred and twenty-five thousand dollars ($725,000.00) from the United States of America for his damages.

29. But for Dr. Oppenheimer's negligence, Mr. and Mrs. Hoover would not have incurred these damages.

IT IS SO ORDERED this 18th day of September, 2014.

_____
James M. Moody Jr.
United States District Judge